

# POLICY AND PROCEDURE       NO.720

| Strip Search | | | |
|---|---|---|---|
| Date Issued<br>January 3, 2008 | Date Effective<br>January 3, 2008 | Revision No. | No. of pages<br>6 |

### PURPOSE:

This policy offers guidance to all members of the Worcester Police Department relative to the proper performance of strip searches. Strip searches may be necessary for the following reasons:
- To protect police officers and others from potentially hidden weapons;
- To protect those in police custody from harm due to hidden weapons or contraband;
- To protect those in custody from harming themselves; and
- To recover evidence of a crime.

### POLICY:

It is the policy and shall be the practice of the Worcester Police Department that all searches of persons shall be conducted in a responsible and professional manner, with due regard for legal requirements set forth by statute and court decisions at both the Federal and State level. At no time is a person to be searched without full respect for the dignity of that person.

### SEARCH INCIDENT TO LAWFUL ARREST:

M.G.L. Ch. 276 §1 authorizes a police officer to search a person incident to the lawful arrest. The purpose of the search is to detect and seize any weapon the person may have in his/her possession and to detect and seize any fruits, instrumentalities, contraband and other evidence of the crime for which the person was arrested. Normally a strip search at the scene of arrest is not necessary. However, if the arrest is for a crime when the detection and seizure of evidence would require a strip search, then a strip search may be conducted, based upon the following guidelines.

### DEFINITIONS & LEGAL AUTHORIZATION:

- **Strip search:**
  - *Definition:* A strip search refers to the removal or rearrangement of a subject's clothing in order to permit inspection of his or her private areas – genitals, pubic area, buttocks, and female breasts -- without any scrutiny of his or her body cavities.
  - *Important qualification:* It is not considered a strip search unless officers remove or rearrange clothing in a way that exposes the subject's naked genitals, buttocks or female breasts. *Comm. v. Ramirez,* 56 Mass. App. Ct. 317 (2002) (defendant's removal of underwear turned procedure into a strip search; court felt that officers could have simply had him remove his layered clothing to learn whether he had contraband).

1

- *Authority:* Officer must have *probable cause* to believe that a strip search will reveal a weapon, dangerous object or other evidence of crime. This search may be conducted without a warrant. *Comm. v. Thomas,* 429 Mass. 403 (1999).
- **Visual body cavity search:**
  - *Definition.* A visual body cavity search extends to a visual inspection of the anal and genital areas, where those areas are manipulated by the subject to permit police personnel to look into the particular orifice or area.
  - *Authority:* Officer must have *probable cause* to believe that a strip search will reveal a weapon, dangerous object or other evidence of crime. This search may be conducted without a warrant. *Comm. v. Thomas,* 429 Mass. 403 (1999).
- **Manual body cavity search:**
  - *Definition:* A manual body cavity search, which is the most intrusive, involves some degree of touching and probing of body cavities.
  - *Important qualification:* It is not considered a manual body cavity search (necessitating a warrant), if the police are able to persuade the subject to remove the item. It is also not a manual probe if police are able to remove the secreted object without touching the body cavity (e.g., a visible package of cocaine protruding from the subject's "butt cheeks" that officers can snatch without manipulating that anal region). Manual body cavity searches shall only be conducted by medical staff at a local hospital and upon approval by the officers' supervisor.
  - *Authority:* A manual body cavity search may only be conducted pursuant to a *search warrant*, issued by a judge, based on **"a strong showing of particularized need supported by a high degree of probable cause."** *Rodriques v. Furtado,* 410 Mass. 878 (1991).

## ROLE OF THE SUPERVISOR:

It shall be the responsibility of the Supervisor to make the determination whether or not a strip search and/or a visual body cavity search should be conducted. The only exception is if exigent circumstances require immediate action by a police officer on the scene or at the police headquarters. It shall also be the responsibility of the Supervisor to make the determination whether to seek a warrant for a body cavity search. The Supervisor will ensure that every provision of this policy is complied with in those cases where a strip search, visual body cavity search, and/or a manual body cavity search is to be performed. Lastly, it shall be the responsibility of the Supervisor to review and forward the incident report through proper channels to the Chief's Office within twenty-four hours of the search.

## STRIP SEARCH AND/OR VISUAL BODY CAVITY SEARCH PROCEDURES:

This policy recognizes that handcuffing a person immediately upon arrest does not prevent that person from destroying or concealing evidence on his/her person. Because of the obvious interference with a citizen's privacy, and the potential to embarrass and humiliate, all strip searches shall follow the following guidelines:

Strip searches and/or visual body cavity searches MAY NOT be conducted as a routine part of the booking procedure.

2

Case 4:15-cv-40103-TSH Document 73-6 Filed 05/24/17 Page 3 of 6

A strip search and/or a visual body cavity search may ONLY be conducted if the SUPERVISOR finds that the suspect is in custody, and the officer has PROBABLE CAUSE to believe that the suspect has a weapon, contraband, or the fruits or instrumentalities of the crime that he could not reasonably expect to discover without this procedure.

After such a finding is made, the Supervisor shall ensure that the following procedures are followed:

> The strip search and/or visual body cavity search shall be recorded on the incident report, which shall be forwarded through proper channels to the Chief's Office, outlining the reasons for the search, the facts supporting the requisite probable cause for the search, the manner in which the search was conducted, the name of the officer performing the search, the supervisor approving the search, the location where the search was conducted, and the results of the search.
>
> Any evidence or property discovered shall be seized, recorded and secured in the normal manner, and recorded on the incident report and on the booking sheet. If no evidence is found, the reporting officer shall make a notation to that effect on the incident report.
>
> Arrestees may be requested to manipulate their own body parts. Police officers may not touch or prod any body part.
>
> In the event that the strip search and/or visual body cavity search is not accomplished, due to a lack of cooperation on the part of the arrested person, the Supervisor shall determine whether or not the arrested person is placed in a cell or kept under guard.
>
> Strip searches and/or visual body cavity searches shall only be undertaken when other, less intrusive, methods will not be as effective in ensuring officer safety or recovering evidence.
>
> All strip searches and and/or visual body cavity searches shall be conducted in a non-humiliating, professional manner, and motivated only by a legitimate law enforcement/public safety objective.
>
> All strip searches and/or visual body cavity searches shall be conducted and observed by officers and/or police personnel of the same gender as the person being searched, unless there are exigent circumstances that require that an officer of the opposite gender perform the search in the field. However, at no time shall a member of the opposite gender perform a strip search at the police station.
>
> Strip searches and/or visual body cavity searches shall never be performed by one officer. In the event that only one officer of the same gender as the person to be searched is available, that officer will perform the search in private, with another police officer stationed out of view of the search, but in close proximity thereto and within audible range. The searching officer shall audibly relay what actions are taking place to the other officer.
>
> Whenever practicable, strip searches should be conducted without requiring the removal of all of the individual's clothing. Instead, the officer performing the strip search shall have the

3

individual remove clothing from the upper half of his/her body, and then upon completion of the search, the individual should then be allowed to replace that clothing. The individual should then be instructed to remove the clothing from the lower portion of the body, including shoes, and upon completion of the search, the individual should be allowed to replace the clothing.

All strip searches and/or visual body cavity searches shall be conducted, whenever feasible, in private, out of the public view.

*In the field*: Strip searches, but not visual or manual body cavity searches, shall be performed in a private room or the patrol wagon when the officer has probable cause to believe that the subject to be searched has a weapon, dangerous object, or evidence, and there is no less intrusive method which can be used to retrieve the weapon, object or evidence.

*Police Headquarters*: Prior to being placed in a cell at the Department's lockup facility, all prisoners are to be thoroughly searched, including those who may have been searched at the time of their arrest. All strip searches and/or visual body cavity searches must be performed in accordance with this policy and all legal requirements set forth by statute and court decisions at both the Federal and State level.

No strip searches and/or visual body cavity searches are to be conducted on camera or in the presence of non-police personnel. The prisoner shall be taken to the Holding Room with the Service Division supervisor, or appropriate supervisor in the event that the Service Division supervisor is unavailable, stationed outside the Holding Room door with the door open. If there are prisoners in the Holding Room, they will be removed to an alternate holding cell until such time as the strip search is completed and the prisoner is fully clothed. The video monitoring tape shall be turned on prior to the performance of the strip search and/or visual body cavity searches, and the supervisor will then relay what actions are being taken so that they may be recorded via the audio portion of the camera monitoring system. It is imperative that at all times that the prisoner remain outside of the video camera range.

### BODY CAVITY SEARCH PROCEDURES:

Manual body cavity searches should only be conducted pursuant to a warrant and after authorization by a supervisor. Precautions should be taken by police officers while handling evidence recovered via body cavity search, such as wearing protective gloves.

Under no circumstances shall a body cavity search be conducted by a police officer.

If an officer has a high degree of probable cause to believe that a weapon, contraband, or the fruits or instrumentalities of the crime may be secreted in a body cavity of the arrested person, a search warrant shall be sought. This applies even when an item may be viewed partially protruding from the body cavity. If the arrested person personally extracts any items from their own body cavity, no such warrant will be necessary. The Supervisor, or his designee, shall make application for the warrant in accordance with established Department procedures.

4

Only a qualified medical professional, pursuant to a warrant, may conduct an intrusion of a body cavity, or extract any items from the body cavity. After the warrant is issued, the arrested person shall be transported to a medical facility so that a qualified medical professional may extract any items from the body cavity. The Supervisor shall ensure that the arrested person is constantly monitored during this trip to the medical facility until such time that the body cavity search is completed.

The manual body cavity search shall be recorded on the incident report, which shall be forwarded through proper channels to the Chief's Office, outlining the reasons for the search, the facts contributing to the high degree of probable cause determination, the manner in which the search was conducted, the name of the officer performing the search, the supervisor approving the search, the location where the search was conducted, the results of the search, and the name of the physician conducting the search.

The arrested person shall then be transported back to the station where the evidence or property discovered shall be seized, recorded and secured in the normal manner, and recorded on the incident report, as well as on the booking sheet. If no evidence is found, the reporting officer shall make a notation to that effect on the incident report.

Note: Although not considered a body cavity search, in the event that an arrested person creates an exigent circumstance by endangering his or her own health by swallowing an item, the arrested person shall be immediately transported to a medical facility for treatment. The Supervisor shall ensure that the arrested person is constantly monitored during the trip to the medical facility until such time that the treatment is completed. Any evidence or property recovered by medical personnel shall be seized, recorded and secured in the normal manner, and recorded on the incident report, as well as on the booking sheet. A search warrant is not necessary in those cases where medical personnel perform an operation necessitated by good medical practice that only incidentally results in the recovery of evidence for police use.

**REPORTS:**

Whenever a person is subject to a strip search, a visual body cavity search, and/or a manual body cavity search, that search will be conducted under the supervision of a Sergeant or higher ranking officer. Upon completion of the strip search, visual body cavity search, and/or manual body cavity search the officer performing the strip search and/or visual body cavity search, or the officer requesting the manual body cavity search, shall submit an incident report outlining the following:

1. The reasons for the search;
2. The facts supporting the requisite probable cause for the search;
3. The manner in which the search was conducted
4. The name of the officer performing the search;
5. The supervisor approving the search;
6. The location where the search was conducted
7. The results of the search; and
8. In the event of a manual body cavity search, the medical professional performing said search.

5

The searching officer's immediate supervisor shall review the written account of the search within twenty-four (24) hours of its occurrence, and forward the report through proper channels to the Chief's Office.

Per:

*Gary J. Gemme*
Chief of Police